UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LONE ROCK TIMBERLAND CO, a
Washington Corporation,

6:11-cv-6274-TC

Plaintiff

and

OPINION AND ORDER

DOUGLAS SCHLATTER,

Involuntary Joinder Plaintiff,

v.

KENNETH E. NICHOLLS, ESTHER A
NICHOLLS,

Defendants

and

UNITED STATES,

Involuntary Joinder Defendant.

COFFIN, Magistrate Judge:

The parties dispute the nature and scope of an easement recorded in 1952 that runs over land

currently owned by defendants Kenneth and Esther Nicholls. Currently before me is Lone Rock

Page 1 - OPINION AND ORDER

Timberland Co. and involuntary joinder plaintiff Doughlas Schlatter's motion for partial summary judgment, which involuntary joinder defendant United States of America supports. The Nicholls oppose the motion. The parties have consented to magistrate judge jurisdiction. I heard oral argument on the motion on June 21, 2012. For the reasons set forth below, I grant the motion in part.

## Background

In January 1952, George and Berthana Kuhn sold Loren and Marlin Holm dba Holm Brothers Lumber Co. an "easement for roadway purposes for the transportation of logs and other timber products over and across [the Kuhn's property in Section 15, Township 26, Range 3 West, Wilamette Meridian Douglas County, Oregon]." The easement was "exclusive" and stated that "the Grantors hereby covenant that they, their heirs and assigns, will not grant any other or additional right of way for such purposes...." (#33, ex. F). The easement was not incidental to Holm Brothers ownership in any land.

About a month before the sale of the easement, however, in December 1951, the Kuhns transferred two parcels of land in Section 15 to Holm Brothers. These two parcels abutted property that Holm Brothers already owned in Section 22, Township 26. Thus, as of January 1952, Holm Brothers owned all the land in Section 22 and two parcels in Section 15, and the Kuhns retained one parcel in Section 15 which had a roadway easement running over and across it. Surveys taken in 1952 and remnants of buildings and a log pond located by plaintiff Lone Rock Timberland Co. indicate that Holm Brothers used the parcels for sawmilling purposes.

In 1965, Holm Brothers entered into a Right of Way and Use Agreement (Right-of-Way R-809) with the United States which was recorded in the Douglas County property records. Under the right-of-way agreement, Holm Brothers granted the United States a perpetual right-of-way through

the subject easement as well as through other lands owned by Holm Brothers for the management and removal of timber and other forest products from the lands of the United States. In return, the United States granted Holm Brothers a right-of-way through the United States parcel in Section 15 as well as through other parcels of land owned or controlled by the United States.

Over the intervening decades, the property affected by the subject easement (and Right-of-Way R-809) changed hands. Holm Brothers transferred its land in Section 22 to Sun Studs, Inc. in 1972. The deed conveying the property from Holm Brothers to Sun Studs Inc. did not expressly transfer the subject easement, but did, however, state that the property was "subject to the right of way and road use agreement, including the terms and provisions thereof, by and between Loren E. Holm and Marlin E. Holm, doing business as Holm Bros. Lumber Co. and the United States of America...." (#33, ex. D). Thus, Holm Brothers transferred the parcels subject to Right-of-Way R-809, which included the subject easement. Sun Studs later conveyed the property in Section 22 to plaintiff Lone Rock, the current owner of the property.

In 1992, Holm Brothers deeded multiple parcels of property, including the two parcels in Section 15 subject to Right-of-Way R-809, to Western Timber Company. The 1992 deed conveying the property to Western Timber transferred the two parcels in Section 15 and a tract lying in Section 16 "together with" the subject easement. (#22-5).[1] Thus, in 1992, Western Timber acquired an interest in the subject easement. In 1994, Western Timber sold involuntary joinder plaintiff Douglas Schlatter 127 acres in Section 15. The deed from Western Timber to Schlatter did not assign an interest in the subject easement. In 1995, however, Western Timber assigned Schlatter and Lone

---

[1]The deed referenced that along with Parcel Two, Parcel Three and Parcel Four the Roadway Easement was being conveyed to Western Timber. Parcels two and three refer to Section 15 and parcel 4 refers to section 16. (#22-5).

Rock the right in common with Western Timber to all of the "privileges and rights provided for in

O&C Logging Road Right-of-Way permit R-809."

 In 1988, the Nicholls purchased an interest in the parcel formerly owned by the Kuhns in

Section 15 that is burdened by the subject easement.[2] The Nicholls currently own the property.

Lone Rock, the United States, Schlatter and Western Timber all have a shared interest in Right-of-

Way R-809. The subject easement travels through the Nicholls parcel in a southeasterly direction,

crossing the eastern property line. Then, Right-of-Way R-809 continues through the northeastern

corner of the United States parcel (Section 15) and into the Schlatter parcel (Section 15) where it

branches into three directions: (1) west, providing access to the United States parcel (which is

managed by the BLM); (2) east, through the Schlatter parcel providing access to adjoining parcels

in Section 14; and (3) south, through the Schlatter and United States parcels providing access to the

Lone Rock parcel (Section 22).

 Problems arose with the public using the easement to access BLM land to shoot guns, hunt,

fish or conduct non-timber related activities in 1991.[3] Kenneth Nicholls told the BLM that he had

gotten permission from Holm Brothers to gate the easement. (#22-14). While Nicholls was "not

happy about placing the gate" he was "concerned for the safety of his family and his property." (Id.)

Later, in 2005, the parties to Right-of-Way R-809 agreed to share in the installation of an electronic

---

 [2]A memorandum agreement transferred an "undivided one-half interest" in the property in
parcel 15 to the Nicholls. (#22-11). The memorandum agreement transferred the parcel
"together with a right of way for a gateway road to be used for ingress and egress filed May 8,
1956, in Volume 255, Recorder's No. 216951, Deed Records of Douglas County, Oregon. (Id.)

 [3]At oral argument, counsel for the parties represented that the issues triggering this
dispute started in early 2000 because of public use of the easement to access BLM land to shoot
guns. A BLM conversation record, however, indicates that Nicholls gated the easement because
of a "problem" in 1991. (#22-14).

Page 4 - OPINION AND ORDER

gate on the easement. (#1-1, p. 12-13). Nicholls installed the electronic gate and provided Lone

Rock and others with a signed note stating the access code and Nicholls's opinion that the road was

for the "express purpose of timber harvest/production only." (#22-15). Despite the installation of

the electronic gate, disputes over the use of the easement continued. The Nicholls allege that the

parties to the easement have tried to expand the easement beyond its permissible scope by using it

for hunting and to commercial rock development. The ongoing dispute ultimately triggered this

lawsuit by Lone Rock requesting declaratory and injunctive relief, claiming a prescriptive easement

and alleging breach of contract.

### Standards

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits
> show that there is no genuine issue as to any material fact and that the movant is
> entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986). The movant has the initial burden of establishing that no genuine

issue of material fact exists or that a material fact essential to the nonmovant's claim is missing.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the

burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material

fact or to establish the existence of all facts material to the claim. Id. Material facts which preclude

entry of summary judgment are those which, under applicable substantive law, may affect the

outcome of the case. Anderson, 477 U.S. at 248.

The United States removed this case under 28 U.S.C. § 1442(a)(1), but Oregon law still

applies. Colorado v. Symes, 286 U.S. 510, 517-18 (1932) (stating removal permits a trial on the

Page 5 - OPINION AND ORDER

merits of the state-law question free from local interests or prejudice while maintaining the highest

regard for state law). In Oregon, whether a contract or deed is ambiguous is a question of law.

Yogman v. Parrot, 325 Or. 358, 361 (1997); James B. House Living Trust v. Thompson, 230 Or.

App. 595, 600 (2009). When construing an instrument, the court first examines "the text of the

disputed provision, in the context of the document as a whole." Yogman, 325 Or. at 361; Tipperman

v. Tsiatsos, 327 Or. 539, 544-45 (the first step in interpreting an easement is to declare the meaning

of the instrument's text). If the provision is clear, the analysis is over. Yogman, at 362. If, however,

the provision is ambiguous, the court must examine the extrinsic evidence of the contracting parties'

intent. Yogman, 325 Or. at 361; Tipperman, 327 Or. at 544-45 (if an easement's text is uncertain,

the court determines the original intent by examining the relevant surrounding circumstances). If

examination of extrinsic evidence does not resolve the ambiguity, the court must rely on "appropriate

maxims of construction." Yogman, 325 Or. at 361.

There are two main types of easements: appurtenant easements and easements in gross.

Appurtenant easements pertain to the land; they burden one parcel of land (the servient estate) for

the benefit of another parcel (the dominant estate). Braat v. Aylett, 278 Or. 549, 552 (1977). An

easement in gross, however, is unrelated to the easement holder's ownership interest in any particular

land parcel. Sunset Lake v. Remington, 45 Or. App. 973, 976 (1977). Easements in gross are

generally not assignable, but easements in gross which have commercial value are assignable. Id.

at 976-77. There is a preference for an easement to be appurtenant, but when the interpretation and

construction of the granting insturment does not evidence an intent for the easement to benefit a

specific land parcel, the easement a court shall construe it as an easement in gross. Id.

///

Page 6 - OPINION AND ORDER

### Discussion

Lone Rock and Schlatter move for summary judgment on their first claim for declaratory judgment and on the Nicholls' counterclaim for declaratory judgment on the grounds that the easement's text clearly conveyed a commercial easement in gross to be used for all roadway purposes consistent with, and incidental to, transporting forest products. (#20 pp. 1-2). The Nicholls oppose the motion, arguing that the easement's ambiguous text–it neither directly "describe[s] the easement as being an easement in gross" nor "describe[s] real property which is to be benefitted by the subject easement–" creates issues of material fact as to the type of the easement but that the text clearly states that the easement may only be used to transport logs and forest products. (#20 p. 7).

### A.    Type of Easement

The first step in resolving the dispute over the type of the 1952 easement is to examine the text in light of the document as a whole. Yogman, 325 Or. at 361; Tipperman, 327 Or. at 544-45. The easement states in relevant part:

> George E. Kuhn and Berthana G. Kuhn, husband and wife, Grantors,...do hereby grant, bargain, and sell unto Loren E. Holm and Marlin E. Holm, dba Holm Bros. Lbr. Co., a partnership, Grantee, an easement for roadway purposes for the transportation of logs and other timber products over and across [the Kuhn's parcel].

> This easement is to be exclusive and the Grantors hereby covenant that they, their heirs and assigns will not grant any other or additional right of way for such purposes,....

(#33, ex. F).

I find that the text of the subject easement unambiguously creates an easement in gross. First, the 1952 easement deed does not identify or otherwise mention real property that is, or could be, the dominant estate. (#33, ex. F). Sunset Lake, 45 Or. App. 976 (When a deed does not mention or

Page 7 - OPINION AND ORDER

identify property that could be the "dominant" or benefitted estate, there can be no grounds upon

which to find that the easement is appurtenant). Next, the subject easement prohibits the grantors (or

their heirs and assigns) from granting any other additional right of way for transporting logs and

timber products. (#33, ex. F). If the easement was appurtenant, it would have made no sense for the

Kuhns to unilaterally bar themselves and their heirs and assigns from allowing a third party to use

the easement. Becker v. North's Restaurants, Inc., 157 Or. App. 136 (Under Oregon's rules of

contract construction, courts must give meaningful effect to all contract provisions). The easement's

text clearly establishes that it is an easement in gross. Or. Rev. Stat. §§ 42.230 and 42.250 (directing

courts to construe deed reservations by "simply ascertain[ing] and declar[ing] what is and giving the

terms their primary and general acceptation.")

The text also clearly indicates that the easement was intended to be commercial in nature.

The easement was conveyed to a business–the Holm Brothers dba Holm Brothers Lumber Company,

indicating a commercial not personal use. The easement's express purpose was to allow the business

to transport "logs and other timber products." (#33, ex. F). A generally accepted definition of

product is:

> 2 (a)(1): something produced; especially: commodity (2): something (as a service)
> that is marketed or sold as a commodity.

Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/product (last

accessed June 29, 2012) (emphasis in original); see also, Moore v. Coos Co., 144 Or. App. 195, 198-

99 (Discussing that use of property for grazing horses as part of boarding operation was for

"livestock production" and noting that "the plain, natural and ordinary meaning of the word

'production,' as reflected by the most apposite of the definitions in Webster's Third New

International Dictionary, is 'the act or process of producing, bringing forth or making.'") "Product"
as used in the context of the easement deed is generally understood as something of commercial
value. See e.g., Or. Rev. Stat. §§ 42.230 and 42.250. The use authorized by the easement–moving
items of a commercial value, results "primarily in economic benefit rather than personal
satisfaction," indicating that the easement was intended to be commercial. Rest. Prop. § 489. In sum,
I find  the text of the 1952 Easement deed clearly indicates that the parties intended it to be a
commercial easement in gross.

   Even assuming arguendo that the easement's text was ambiguous, examination of the
relevant circumstances surrounding conveyance of the easement leads to the conclusion that it is a
commercial easement in gross. Tipperman, 327 Or. at 544-45.  When the parties executed the
easement, Holm Brothers owned all the property in Section 22, operated a sawmill on Section 22,
and, approximately a month before, acquired land in Section 15 from the Kuhns.    These
circumstances suggest that Holm Brothers utilized its land for timber production and for milling raw
timber into finished products.  Given the Holm Brothers milling activities, it is likely that it would
have wanted to control timber activities on surrounding lands owned by others (including the United
States).  By contracting for the right to own the exclusive easement accessing the lands around Holm
Brothers property and sawmill, Holm Brothers would have had to grant (or deny) permission to
anyone (like the United States) wanting to use the easement to manage and harvest timber interests.
The only way that Holm Brothers would have been able to grant such permission is if the easement
was in gross.  Further, Holm Brothers subsequent conduct of entering into the Right-of-Way R-809
agreement with the United States in 1963 (which was recorded in 1965) implies that Holm Brothers
viewed the easement as an alienable commercial easement in gross. Yogman, 325 Or. At 364 (stating

Page 9 - OPINION AND ORDER

that extrinsic evidence of the parties' intent may include "course of performance" evidence–the subsequent conduct of the parties).

The Nicholls argue however, that the Kuhns' transfer of two parcels of land to Holm Brothers about a month before the execution of the subject easement creates an ambiguity. The deed transferring the two parcels did not include an access right over the Kuhns retained parcel for the benefit of the conveyed land. Thus, according the Nicholls a reasonable juror could conclude that the parties executed the subject easement a month later to correct this oversight. This contention ignores the law of easements. Regardless of whether the deed specified an access right, Holm Brothers would have had an implied easement to their property as travel over the roadway on the Kuhn parcel was the only way to access the Holm Brothers' section 15 parcels. Tyska v. Prest, 163 Or. App. 219 (1999). Moreover, instead of confirming an implied easement, the 1952 easement granted Holm Brothers exclusive access for the purpose of hauling logs and timber products. Finally, the parties were aware of Holm Brothers' property and sawmill in Section 22, which could only be accessed over the Kuhn parcel, and nothing in the easement's text indicates that the easement's use was limited only to accessing lands in Section 15. In short, the timing of the easement does not create an ambiguity.

The Nicholls also argue that Holm Brothers' subsequent conduct creates ambiguities about the type of easement the parties intended. In support of this, the Nicholls point to 1992 and 1972 land conveyances from Holm Brothers to third parties. The record shows that the 1992 deed from Holm Brothers to Western Timber transferring the two parcels of property in Section 15 also transferred the subject easement. The Nicholls argue the inclusion of the easement in the transfer implies that Holm Brothers understood the easement to benefit lands in Section 15, making it

Page 10 - OPINION AND ORDER

appurtenant. The 1992 deed's language conveying two parcels in Section 15 and a parcel in Section 16–a parcel not acquired from the Kuhns, along with the easement, undermines this argument. Instead, this conveyance language reinforces the conclusion that Holm Brothers understood the easement to be in gross and alienable. The Nicholls further contend that a reasonable juror could conclude that Holm Brothers understood the easement to only benefit lands in Section 15 because the easement is not mentioned in the 1972 deed transferring parcels in Section 22 from Holm Brothers to Sun Studs. The deed, however, undermines this contention because, although it does not expressly mention the subject easement, it states that the conveyed parcels are subject to Right-of-Way R-809. (#33, ex. D). Inclusion of this provision reserving Holm Brothers (and the United States) a continued right of access through Section 22 further bolsters the conclusion that Holm Brothers understood the easement did not benefit any particular parcel. In short, the 1992 and 1972 transfers clearly establishes that Holm Brothers understood the easement to be in gross.

I find that both the easement's text and the extrinsic evidence (independently and together) clearly establish that the type of easement the parties intended to create was a commercial easement in gross.

### B.    Scope of Easement

The parties also dispute the scope of the easement. The language in the subject easement grants "an easement for roadway purposes for the transportation of logs and other timber products over and across the following described property...." (#33, ex. F). "The use of an easement is limited to that which is reasonably necessary for the easement's intended purpose." State v. Kortge, 84 Or. App. 153, 158 (1987).

In their partial summary judgment motion, Schlatter and Lone Rock contend that the express

purpose of the easement is clear, and seek a declaration that the easement may "be used for all roadway purposes consistent with, and incidental to, the transportation of forest products in perpetuity–including for the purposes of protecting, cultivating, managing, harvesting and replanting timber." (#20, pp. 1-2). The Nicholls argue that the easement's text clearly restricts its use to hauling logs and other timber products over the Nicholls' property and does not include use for the incidental purpose of forest management.

At oral argument, I asked the parties what triggered the dispute over the easement's use. The Nicholls' counsel explained that Lone Rock has attempted to expand the use of the easement by using it for hunting and to construct a rock quarry. Plaintiffs counsel argued that Lone Rock and Schlatter only wanted to use the easement for purposes consistent with and incidental to transporting forest products. I noted that plaintiffs' operative complaint belied this assertion as it sought a "determination of rights, status and other legal relations...prior to further use of the roadway for forest management, commercial rock development, wildlife game control or other uses." (#1-1, ¶ 8). Plaintiffs' counsel responded that Lone Rock and Schlatter did not seek a declaration that the easement's scope included development of a commercial rock quarry[4] or hunting and that plaintiffs had narrowly tailed the partial summary judgment motion to reflect such.

As the discussion continued, however, Lone Rock and Schlatter's counsel appeared to assert that development of a "personal-use" rock quarry was incidental to the transportation of forest products because laying gravel on the roadway easement is necessary to move modern logging machinery (which is quite large) to Lone Rock and Schlatter's properties and to log timber year

_____

[4] At oral argument, counsel for the United States argued that the gravel quarry contention was a "red herring."

Page 12 - OPINION AND ORDER

round. The Nicholls argue that, even if uses incidental to transporting timber products was within the scope of the easement, the development of a rock quarry and laying gravel are not within the scope of the reasonable incidental use granted sixty years ago.

Lone Rock and Schlatter argue that in order to be able to transport timber products, a forest owner must also be able to access the forest to protect, cultivate, harvest and replant the forest. Thus, these incidental uses are reasonably necessary to the easement's intended purpose of transportation of logs and other timber products. Plaintiffs also point out that the phrases "transporting logs" or "transporting timber/forest products" has a distinct meaning within the context of the timber industry, which conveys an understanding that an easement for these purposes is also allowed to be used for other incidental forest management purposes. In support of this argument, plaintiff rely on Article I, Section 18 of the Oregon Constitution, Oregon states and Oregon case law. See e.g., Oregon Forest Conservation Act (Oregon Laws 1941, Ch. 237) (requiring harvested forestlands to be reforested).

I agree with Lone Rock and Schlatter that to harvest timber, a logging operation must be able to clear brush, otherwise manage the forest and cut down trees before logs or other timber products can be transported. Construing the easement's scope so narrowly as only allowing access to transport logs and other timber products would preclude Lone Rock and Schlatter from having any logs or other timber products to transport. I find that the scope of the easement includes incidental forest management.

The scope of the incidental forest management, however, is limited to "that reasonably necessary for the easement's intended purpose." Kortge, 84 Or. App. at 158. Here, what controls the scope of the incidental forest management is what the parties intended in 1952, not how logging

Page 13 - OPINION AND ORDER

practices have expanded over the last sixty years. For example, laying gravel on the easement to allow access for present day larger equipment might not have been contemplated as an incidental forest management use sixty years ago. Thus, my finding that the easement's scope includes forest management is not the end of my analysis. Instead, I must consider what incidental use is reasonably necessary for the easement's intended purpose. To facilitate this inquiry, I direct the parties to, within twenty days of the date this order is filed, to meet and confer and to then file with the court a joint statement of what issues remain regarding the determination of the scope of use for incidental forest management.

### Conclusion

I grant the summary judgment motion (#20) in part. I find that the easement is a commercial easement in gross, fully assignable and alienable. I find that the scope of the easement includes use for transporting logs and other timber products and for incidental forest management purposes. I, however, reserve making findings on what activities are (or are not) included in the easement's use for incidental forest management until after the parties meeting and confer and file a joint statement regarding what issues remain regarding the incidental forest management scope. Accordingly, within twenty days of the date this order is filed, all interested parties (including involuntary joinder plaintiff and involuntary joinder defendant) shall, after meeting and conferring, file a joint statement regarding what issues remain to be resolved regarding the scope of the incidental forest management use. The Clerk is directed to enter judgment in accordance with this order.

DATED this __16__ day of July 2012.

THOMAS M. COFFIN
United States Magistrate Judge

Page 14 - OPINION AND ORDER